IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 15-182 |
| | ) | |
| ADOLPH BROWN | ) | |

## MEMORANDUM OPINION

Nora Barry Fischer, U.S. District Judge

## I.     Introduction

This matter is before the Court on a Motion to Suppress Evidence and Amendment to said Motion filed by Defendant Adolph Brown ("Defendant"), and the Government's opposition thereto. (Docket Nos. 45, 48, 60, 63). The Court held a motion hearing on December 19, 2016, the official transcript of which has been filed of record and considered by the Court. (Docket Nos. 64, 66). The parties subsequently filed proposed findings of fact and conclusions of law. (Docket Nos. 98, 100, 103, 104). After careful consideration of all of the parties' submissions and the credible evidence of record, and for the following reasons, Defendant's Motion to Suppress and Amendment are denied.

## II.     Background

### A.     Facts

Defendant seeks to suppress evidence seized following the stop and search of a vehicle in which he was a passenger. Prior to that occurrence, John A. Orlando, a Special Agent of the Federal Bureau of Investigation ("FBI"), filed an Application for a Warrant Directing the

Disclosure of GPS/E911 Location Data Relating to a Wireless Telephone utilized by Defendant, a redacted copy of which is attached as Exhibit 2 to the Government's Omnibus Response to Defendant's Pretrial Motions (Docket No. 48-2) (hereinafter, the "Affidavit"). In the Affidavit, Special Agent Orlando first summarized his ten years of employment with the FBI, as well as his experience in investigating drug trafficking crimes. (Aff. ¶¶ 1-3). Special Agent Orlando explained that a warrant was sought pursuant to, *inter alia*, 18 U.S.C. § 2703(c)(1)(A), directing the disclosure of records and physical location data generated at any time up to 45 days from the date of the warrant that will establish the approximate position of the wireless telephone serviced by Sprint and assigned telephone number 330-541-6175 as utilized by Defendant (the "target telephone"). (Id. ¶ 5.a). Special Agent Orlando averred that there was probable cause to believe that Defendant was using the target telephone to commit drug trafficking offenses and that the requested location-based data would provide evidence of those offenses. (Id. ¶¶ 6, 7).

In discussing probable cause, Special Agent Orlando averred that he was participating in an investigation by federal, state and local law enforcement agencies of drug traffickers operating in the towns of Farrell and Sharon, which are located in Mercer County in the Western District of Pennsylvania. (Aff. ¶ 14). Defendant, who had a criminal history which included arrests and convictions for narcotics possession and drug trafficking, was believed to be a source of cocaine supply to an individual who sold drugs in Farrell. (Id. ¶¶ 12, 13).

On August 27, 2014, law enforcement intercepted text messages and a telephone call between specific targets of the investigation which indicated that they were about to receive a supply of cocaine from individuals unknown to law enforcement at that time. (Aff. ¶¶ 16-18). On that same date, surveillance units observed a silver Mercedes sedan located in Farrell at the residence of one of the targets of the investigation. (Id. ¶ 19). Law enforcement subsequently

conducted a traffic stop of that vehicle and identified Defendant, who was from Akron, as a passenger. (Id.). After identifying Defendant and the female driver of the vehicle, officers permitted them to leave the area. (Id.).

In January 2015, law enforcement obtained an order authorizing wire and electronic interception of a particular telephone associated with a target of the investigation. (Aff. ¶ 20). On January 28, 2015, the target used that telephone to call an unknown female and stated that the target was preparing to travel from Farrell to Akron, a location law enforcement believed was a potential source of cocaine supply. (Id. ¶¶ 21, 22). Law enforcement tracked the target to the Akron area and then back to Pennsylvania. (Id. ¶ 22). At that point, law enforcement conducted a traffic stop of the target's vehicle, obtained consent to search and recovered approximately five ounces of cocaine from inside the center arm rest. (Id.). The target then agreed to cooperate with law enforcement (hereinafter, the "confidential informant" or "CI") and informed them that he acquires his cocaine from Defendant, who lives in the Akron area. (Id. ¶ 23). The CI explained that before being intercepted by law enforcement, the CI had traveled to Akron to meet Defendant and had purchased the recovered cocaine. (Id.). The CI further indicated that Defendant travels in a silver Mercedes sedan, and the CI also provided Defendant's telephone number. (Id.).

On January 29, 2015, the CI contacted agents to advise that he had just received a telephone call from Defendant. (Aff. ¶ 24). The CI explained that it was typical for Defendant to call after they conducted a cocaine transaction to make sure the CI arrived home without being interdicted by law enforcement. (Id.).

On January 30, 2015, the CI made a consensually recorded telephone call to Defendant during which the CI inquired with Defendant about purchasing two kilograms of cocaine. (Aff. ¶ 25). Defendant informed the CI that "they" (the kilograms of cocaine) should be arriving the

3

following day and instructed the CI to wait for Defendant to call. (Id.). Accordingly, Agent Orlando averred that "law enforcement expects that [Defendant] will soon deliver two kilograms of cocaine to [the CI] in the Western District of Pennsylvania, and that therefore, [Defendant's] location will allow law enforcement to interdict this shipment of narcotics." (Id.).

Based on Special Agent Orlando's Affidavit, United States Magistrate Judge Cynthia Eddy found probable cause to conclude that federal narcotics trafficking crimes had been and would continue to be committed in this District by Defendant and others, and that physical location data for the target telephone would provide evidence of the commission of those crimes. (See Docket No. 48-2). Therefore, on January 31, 2015, Magistrate Judge Eddy issued a warrant directing the disclosure of GPS/E911 location data (commonly referred to as "ping") relating to the target telephone utilized by Defendant for a period of up to 45 days. (Id.). According to the Government, the warrant was executed on that date, and agents continued to collect "ping" data from the target telephone until Defendant's arrest on March 2, 2015. (See Docket No. 48 at 5).

In the days leading up to March 2, 2015, law enforcement used a confidential informant to place consensually recorded calls to Defendant during which it was discussed that Defendant would be travelling from Akron to Farrell to deliver approximately 27 ounces of cocaine. (See Docket 1-1, Aff. in Supp. of Crim. Compl. ¶ 5). On March 2, 2015, agents observed the "ping" data related to the target telephone indicated that Defendant was starting to head in the direction of Farrell. (Docket No. 48 at 5). Law enforcement used physical surveillance to identify the vehicle in which Defendant was travelling and continued to follow the vehicle. (Id.). Pennsylvania State Police eventually conducted a traffic stop in Sharon, Pennsylvania of a white Lexus sedan driven by Crystal Johnson in which Defendant was a passenger. (Aff. in Supp. of Crim. Compl. ¶ 6). Ms. Johnson consented to a search of the vehicle, and the police located approximately 27 ounces of

cocaine hidden behind a baby's car seat in the rear passenger area. (Id. ¶ 7). When subsequently interviewed at the State Police barracks, Defendant confessed that the package contained cocaine and that he was transporting it to an individual in Farrell, Pennsylvania. (Id. ¶ 8).

### B.     Relevant Procedure

On March 3, 2015, a criminal complaint was filed against Defendant alleging that he violated provisions of the Controlled Substances Act by possessing with intent to distribute cocaine. (Docket No. 1). Subsequently, on August 25, 2015, Defendant was charged in a one-count Indictment with possession with intent to distribute 500 grams of more of cocaine on or about March 2, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). (Docket No. 24).

Defendant's second CJA appointed counsel, Lee Markovitz, filed the pending Motion to Suppress Evidence arguing that Defendant's Fourth Amendment rights were violated and the evidence should be suppressed because: (1) the warrant was not supported by probable cause; (2) the application for the warrant did not comply with 18 U.S.C. § 2518(1)(c); (3) the application for the warrant was not executed or properly authorized by an attorney for the Government; (4) the warrant was issued in the Western District of Pennsylvania, but it was executed outside of this District; (5) law enforcement improperly used a "stingray" to track Defendant; (6) the warrant was excessively broad in timing and scope; and (7) paragraph 25 of the Affidavit contained a knowing or reckless omission. (See Docket No. 45, ¶¶ 4.A - 4.G).

After Attorney Markovitz moved to withdraw as Defendant's counsel, Robert Carey was appointed to represent him. (Docket Nos. 53, 54, 55). Attorney Carey filed an Amendment to the Motion to Suppress, arguing that suppression is warranted for these additional reasons: (1) Defendant was prejudiced by the Government's alleged Rule 41 violation; (2) the police searched the vehicle in which Defendant was a passenger without probable cause to support a traffic stop or

reasonable suspicion of criminal activity; (3) the Affidavit did not properly establish the confidential informant's reliability; and (4) location and GPS/E911 data were not necessary to achieve the goals of the investigation. (See Docket No. 60, ¶¶ 10.a – 10.d).

Attorney Carey represented Defendant at the motion hearing held on December 19, 2016. At Defendant's request, Attorney Carey subsequently moved to withdraw as counsel. (Docket No. 71). The Court granted the motion and appointed Stephen Begler to represent Defendant. (Docket Nos. 80, 81). Attorney Begler filed Defendant's proposed Findings of Fact and Conclusions of Law and supplemental briefing, to which the Government responded. (Docket Nos. 98, 100, 103, 104). As the matter has been fully briefed and argued, it is now ripe for disposition.

**III.**    **Discussion**

Defendant argues that the traffic stop, vehicle search and his arrest and confession all were the product of his unlawful tracking from Ohio to Pennsylvania in violation of his rights under the Fourth Amendment. In support of this argument, Defendant claims that the Affidavit and warrant are deficient in multiple respects, raising eleven arguments for suppression as set forth in Part II.B., supra, all of which are opposed by the Government. The Court will address each of Defendant's arguments, in turn.

    **A.**    **The Warrant is Supported by Probable Cause.**

Defendant first contends that his Fourth Amendment rights were violated because the warrant issued by Magistrate Judge Eddy was not supported by probable cause. (Docket No. 45, ¶ 4.A). Related to this contention, Defendant claims probable cause was lacking because the Affidavit did not contain any information to establish that the confidential informant was reliable. (Docket Nos. 60, ¶ 10.c; 61 at 3). The Government counters that the warrant was supported by probable cause, and the confidential informant's reliability can be inferred from the facts contained

in the Affidavit. (Docket Nos. 48 at 6; 63 at 7-9, 10-12).

In <u>United States v. Coca</u>, Crim. No. 14-262, 2016 WL 7013037 (W.D. Pa. Dec. 1, 2016), this Court summarized the law applicable to review of a magistrate judge's determination of probable cause as follows:

> "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983) (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the initial probable cause determination made by the magistrate." <u>United States v. Conley</u>, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing <u>Gates</u>, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." <u>Gates</u>, 462 U.S. at 238 (quoting <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." <u>United States v. Miknevich</u>, 638 F.3d 178, 182 (3d Cir. 2011) (internal quotations omitted). Still, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " <u>United States v. Jones</u>, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal quotations omitted).
>
> A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." <u>Conley</u>, 4 F.3d at 1205. In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record." <u>Jones</u>, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. <u>United States v. Whitner</u>, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." <u>Miknevich</u>, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." <u>Gates</u>, 462 U.S. at 238. Further, " 'probable cause is a fluid concept' that turns on 'the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.' " <u>Miknevich</u>, 638 F.3d at 182 (quoting <u>United States v. Shields</u>, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. <u>Id.</u>

<u>Coca</u>, 2016 WL 7013037, at *4.

In view of these well-established principles, the warrant issued by Magistrate Judge Eddy authorizing the tracking of the target telephone utilized by Defendant is supported by ample probable cause. As discussed above, the Affidavit provides details of the investigation that led agents to Defendant, who was from Akron, including law enforcement's identification of Defendant on August 27, 2014, as a passenger in a silver Mercedes that had been in Farrell, Pennsylvania at the residence of one of the targets of the investigation. (Aff. ¶¶ 16-19). The Affidavit then recounts that an individual who transported cocaine from Akron to Pennsylvania was intercepted by law enforcement and subsequently began to cooperate. (Id. ¶¶ 22-23). The CI indicated that he acquires his cocaine from Defendant, who lives in the Akron area. (Id. ¶ 23). The CI also provided other identifying information, including that Defendant travelled in a silver Mercedes, as well as Defendant's telephone number, which was the target telephone identified in the Affidavit. (Id.). The CI made a consensually recorded call to Defendant during which they discussed the CI purchasing two kilograms of cocaine from Defendant. (Id. ¶ 25). Defendant then advised that the cocaine should be arriving the following day and the CI should wait for Defendant to call. (Id.). All of this information contained in the "four corners" of the Affidavit constitutes a substantial basis for Magistrate Judge Eddy to have concluded that Defendant was using the target telephone in connection with his drug trafficking activity, thus there was a fair probability that the location of the target telephone would provide information relative to that activity. Accordingly, the warrant authorizing the tracking of the target telephone was supported by probable cause.

The probable cause determination is not negated by the fact that the Affidavit did not specifically address the CI's reliability, despite Defendant's contention to the contrary. (Docket Nos. 60, ¶ 10.c; 61 at 3).

"A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." United States v. Stearn, 597 F.3d 540, 555 (3d Cir. 2010). However, "[i]nformants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances either that the informant has provided reliable information in the past or that the information has been corroborated through independent investigation." United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006) (citations omitted). "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' " Gates, 462 U.S. at 244-45 (citation omitted).

As the case law makes clear, the probable cause determination does not hinge on a statement that a confidential informant proved reliable in the past if the information is independently corroborated by law enforcement, which is just what occurred here. As explained in the Affidavit, months before the confidential informant began cooperating with law enforcement, agents began collecting information about Defendant. In August 2014, Defendant was identified as a passenger in a silver Mercedes that had been in Farrell, Pennsylvania at a residence of one of the targets of the investigation. (Aff. ¶ 19). Agents then determined that Defendant lived in Akron, Ohio. (Id.).

On January 28, 2015, one of the targets of the investigation communicated to an unknown individual that the target was preparing to go from Farrell to Akron, which law enforcement believed was a potential source of cocaine supply. (Aff. ¶¶ 21, 22). Agents tracked the target to Akron and then back to Pennsylvania, conducted a traffic stop of the target's vehicle and recovered five ounces of cocaine after he consented to a search of the vehicle. (Id. ¶ 22). After the target

began to cooperate as a confidential informant, the CI explained that he acquires cocaine from Defendant, who lives in the Akron area, that Defendant travelled in a silver Mercedes and provided Defendant's telephone number. (Id. ¶ 23). This information was corroborated because law enforcement already knew of Defendant and where he resided based on their prior identification of him in August 2014, when he was a passenger in a silver Mercedes that had been at the residence of a target of the investigation. (Id. ¶ 19). Law enforcement also already had Defendant's telephone number because of a wiretap of the CI's telephone. (Id. ¶ 20; Docket No. 66 at 80).

In addition to independently corroborating the identifying information provided by the confidential informant, it is significant that agents directly supervised the CI's cooperation. (Aff. ¶ 25). Under that supervision, the CI placed a consensually recorded call to Defendant during which they discussed a transaction involving two kilograms of cocaine. (Id.). Therefore, law enforcement did not need to rely on the CI's description of the conversation since they recorded the call. Law enforcement's direct supervision of the CI supports a finding of reliability and differentiates this case from one where the police receive information from an anonymous tipster.

In sum, the Affidavit was not required to contain a statement regarding the confidential informant's reliability and its absence is not dispositive of the reliability determination or the probable cause assessment. Magistrate Judge Eddy could reasonably infer that the CI provided accurate information based on its consistency with facts already known to law enforcement and because agents directly supervised the CI's cooperation. Thus, there is no merit to Defendant's claim that the CI was unreliable or that the warrant was not supported by probable cause. Under the totality of the circumstances, the information contained in the Affidavit established probable cause for issuance of the "ping" warrant to track the target telephone used by Defendant.

**B.     The Application for the Warrant Was Not Required to Comply with 18 U.S.C. §§ 2518(1)(c) and 2516(1).**

Defendant's second and third arguments claim that the application for the warrant failed to comply with 18 U.S.C. §§ 2518(1)(c) and 2516(1). (Docket No. 45, ¶¶ 4.B and 4.C). These arguments are without merit, as the requirements Defendant cites do not apply to a warrant obtained pursuant to 18 U.S.C. § 2703, which is the type of warrant at issue.

Section 2518 governs procedures for the interception of wire, oral or electronic communications and specifies the information which must be included in an application for an order "under this chapter." See 18 U.S.C. § 2518(1).[1] Section 2516 concerns authorization for interception of wire, oral or electronic communications and provides that an attorney for the Government may authorize an application to a federal judge of competent jurisdiction for, and the judge may grant "in conformity with section 2518 of this chapter," an order authorizing the interception of wire or oral communications. See 18 U.S.C. § 2516(1). The "chapter" referred to in both §§ 2516 and 2518 is Chapter 119 of the United States Code, which again relates to the interception of wire, electronic or oral communications.

The warrant obtained in this case was issued pursuant to 18 U.S.C. § 2703, which is in Chapter 121 of the United States Code relating to stored wire and electronic communications and transactional records access (hereinafter, the "Stored Communications Act"). Therefore, the requirements of §§ 2518(1)(c) and 2516(1) contained in Chapter 119 are irrelevant in this case.

---

1 According to Defendant, the application for the warrant did not include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous" contrary to 18 U.S.C. § 2518(1)(c). (See Docket No. 45, ¶ 4.B).

Defendant has not attempted to argue that there is any connection between § 2703 and §§ 2518(1)(c) and 2516(1). Any attempt to do so would be futile because no connection exists. Instead, Defendant's counsel asserted at the motion hearing that the Government "applied for and obtained a warrant under Section 2703. But they used that warrant as if it was a 2518 or 2516 warrant. 2703 does not allow the authorities to obtain communications. It only allows the authorities access to data and information." (Docket No. 66 at 28-29). Defense counsel then claimed "that [the Government] overstepped the bounds of [a] 2703 warrant and got into areas that they didn't receive from the magistrate, which would be under 2518 or 2516." (Id. at 29). Counsel for the Government responded that it did not obtain any oral or electronic communications, emphasizing that there was no wiretap of Defendant's telephone but only a consensually recorded call made by a confidential informant. (Id.).

Defendant has identified no evidence to substantiate his claim that the Government "overstepped the bounds" of the warrant and used it to obtain unauthorized information. The Court finds that Defendant's bald assertions are wholly unsupported by the record, and there simply is no basis to conclude that the Government overstepped or obtained any information that was not authorized by the warrant.

### C.      The Warrant Was Not Improperly Executed Outside of this District.

Defendant's fourth argument is that the warrant was issued in the Western District of Pennsylvania, but it was improperly executed outside of this District because there is no indication that the target telephone or the cell towers were located here. (Docket Nos. 45, ¶ 4.D; 66 at 30-31). Defendant is incorrect.

Federal Rule of Criminal Procedure 41 addresses when a magistrate judge can issue a warrant for a person or property located outside the district. According to Rule 41, a magistrate

judge "has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed." Fed. R. Crim. P. 41(b)(2). However, a court that has jurisdiction over the offense which is being investigated has authority to issue a search warrant for information from service providers outside of the district. See 18 U.S.C. § 2703(c)(1)(A) (authorizing a "court of competent jurisdiction" to issue a search warrant for information from electronic service providers); 18 U.S.C. § 2711(3)(A)(i) (defining "court of competent jurisdiction" to include "any district court of the United States (including a magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated").

Defense counsel argued at the motion hearing that "Rule 41 does not . . . allow for any magistrate to authorize or order a warrant all throughout the country." (Docket No. 66 at 31). To the extent Defendant contends that Rule 41 supersedes § 2703, the United States Court of Appeals for the Third Circuit has rejected that contention. See United States v. Bansal, 663 F.3d 634, 662 (3d Cir. 2011) (rejecting contention that Rule 41 trumps § 2703 and finding that the Pennsylvania Magistrate Judges who authorized the warrants at issue had authority to do so, even though they were executed upon service providers in California); see also United States v. Harder, Crim. No. 15-1, 2016 WL 7647635, at *7-8 (E.D. Pa. Apr. 18, 2016) (citing Bansal and observing that a court is authorized to issue out-of-district electronic search warrants provided the issuing court has jurisdiction over the offense under investigation); United States v. Noyes, No. 1:08-cr-55, 2010 WL 5139859, at *9 n.8 (W.D. Pa. Dec. 8, 2010) (finding that courts are authorized to issue search warrants for electronic communications located in other judicial districts in cases where the issuing court has jurisdiction over the offense under investigation).

Here, when Magistrate Judge Eddy issued the warrant, this Court had jurisdiction over the offense that was under investigation, which involved Defendant's alleged drug trafficking in the towns of Farrell and Sharon in the Western District of Pennsylvania. Therefore, the warrant was properly executed even if it captured "ping" information from the target telephone at times when it was outside of this District.

**D.     There Is No Evidence that Law Enforcement Used a "Stingray."**

Defendant's fifth argument is that the means used by law enforcement to track him exceeded the scope of the warrant to the extent agents used a cell site simulator or "stingray." (Docket No. 45, ¶ 4.E). The Government responded that law enforcement did not utilize a cell site simulator to track Defendant's telephone. (Docket No. 48 at 8).

At the motion hearing, Defendant's counsel again asserted that law enforcement used a "stingray" and claimed that "the Government has not been forthright in [its] presentation to the Court that a stingray was not utilized." (Docket No. 66 at 34). Government counsel reiterated that no such device was used in this case and argued Defendant's accusation that the Government violated its discovery and candor obligations should be supported by something more than a generic belief. (Id. at 34-35). At the conclusion of the hearing, counsel for the Government requested a ruling from the Court on the accusation leveled by Defendant. (Id. at 89). The Court stated that to the extent Defendant or his counsel insists that Government counsel "acted inappropriately, without candor to the Court, and/or didn't provide complete discovery, you can make that argument and statement, and [Government counsel] will respond, then I will make a ruling." (Id. at 90).

Counsel for Defendant has raised no subsequent argument claiming that the Government violated any discovery or candor obligations. Although Defendant has not pursued the matter, the Court notes that there is nothing in the record to indicate that the Government violated any such

obligations. Likewise, there is nothing to indicate that law enforcement used a "stringray" in this case contrary to the warrant issued by Magistrate Judge Eddy. Further, Defendant has not produced any evidence to substantiate his bare assertion that a "stingray" device was utilized. Accordingly, the Court cannot conclude that the means used to track Defendant exceeded the scope of the warrant.

### E. The Warrant Was Not Excessively Broad.

Defendant's sixth argument is that the warrant was excessively broad because it provided for a 45 day tracking period, and there was no limitation on the places where he could be tracked. (Docket No. 45, ¶ 4.F). Defendant has cited no authority to support his claim that the warrant was excessively broad as to time and place, and the Court is unaware of any such precedent. Moreover, Defendant has not demonstrated that he was prejudiced in any way by virtue of the authorized tracking, stating only that "on its face . . . the warrant . . . was excessive and impermissible." (Docket No. 66 at 39). Given same, there is no basis to conclude that the warrant was excessively broad, particularly in view of the fact that the warrant was supported by probable cause for the reasons discussed in Part III.A., supra.

### F. Defendant Is Not Entitled to a Franks Hearing.

Defendant's seventh argument is that the Affidavit contained a knowing or reckless omission in ¶ 25 which materially affected whether it satisfied the requirement of showing probable cause. (Docket No. 45, ¶ 4.G). On this point, Defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

Upon an appropriate showing, a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in a search warrant affidavit establishing probable cause. Franks, 438 U.S. at 155-56. To establish that a hearing is warranted, Franks requires the

defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Id. at 155-56, 171. In order to make the substantial preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171; see also Yusuf, 461 F.3d at 383 n.8.

Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an officer withholds facts that any reasonable person would know that a judge would want to know. Wilson, 212 F.3d at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." United States v. Brown, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. Franks, 438 U.S. at 171; Yusuf, 461 F.3d at 383.

Finally, if the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is

required." Franks, 438 U.S. at 171-72. However, if the remaining content is insufficient, the

defendant is entitled to a hearing.[2] Id. at 172. In consideration of these principles, Defendant is not

entitled to a Franks hearing in this case for the reasons explained below.

Paragraph 25 of the Affidavit states as follows:

> On January 30, at approximately 5:55 p.m., [REDACTED] made an outgoing
> telephone call to the TARGET TELEPHONE, utilized by BROWN. After ending
> the call, which was recorded, [REDACTED] advised agents that he had spoken with
> BROWN. [REDACTED] informed BROWN that he wanted to purchase two
> kilograms of cocaine. BROWN informed [REDACTED] that "they" (kilograms of
> cocaine) should be arriving the following day and instructed [REDACTED] to wait
> for him to call him then. Accordingly, law enforcement expects that BROWN will
> soon deliver two kilograms of cocaine to [REDACTED] in the Western District of
> Pennsylvania, and that therefore, BROWN's location will allow law enforcement to
> interdict this shipment of narcotics.

(Aff. ¶ 25). Other than broadly alleging that ¶ 25 contained a knowing or reckless omission which

materially affected whether the Affidavit established probable cause, Defendant's Motion to

Suppress fails to specifically identify the alleged false statement or omission as required by Franks,

438 U.S. at 171. (See Docket No. 45, ¶ 4.G). At the motion hearing, Defendant's counsel asserted

that ¶ 25 was misleading because Defendant and the confidential informant only discussed a drug

deal but did not confirm it, yet Agent Orlando concluded a deal would soon occur and applied for a

warrant to track the target telephone utilized by Defendant. (See Docket No. 66 at 78, 83-84).

Defendant's counsel critiqued Agent Orlando's conclusion that a drug deal was imminent, arguing it

was not an "accurate assessment of what the calls were and was misleading." (Id. at 83). Despite

Defendant's failure to specifically identify the alleged false statement or omission, his counsel's

arguments suggest the statement in ¶ 25 indicating "law enforcement expects that BROWN will

---

2 If a Franks hearing is held, and the defendant proves by a preponderance of the evidence that the false
statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth,
and with the affidavit's false material set aside, the remaining content is insufficient to establish probable
cause, then the warrant must be voided and the fruits of the search must be excluded from the trial.
Franks, 438 U.S. at 156.

soon deliver two kilograms of cocaine to [REDACTED] in the Western District of Pennsylvania"
was misleading to Magistrate Judge Eddy.

Even assuming Defendant has sufficiently identified the statement in ¶ 25 he contends is
false, he has not submitted any material to contradict it. Instead, Defendant asserts his disagreement
with Agent Orlando's interpretation of the call and the conclusion that Defendant soon would
deliver two kilograms of cocaine to the confidential informant. (See Docket No. 66 at 83).
Contrary to the requirements of Franks, Defendant has not made an offer of proof or submitted any
materials such as sworn affidavits or otherwise reliable statements from witnesses to establish that
Agent Orlando included in ¶ 25 of the Affidavit a false statement that was made knowingly and
intentionally or with reckless disregard for the truth. See Franks, 438 U.S. at 171; Yusuf, 461 F.3d
at 383, n.8. As such, Defendant has not made the requisite substantial preliminary showing, and he
is not entitled to a Franks hearing.

**G.      Defendant Was Not Prejudiced by the Asserted Rule 41 Violation.**

Defendant's eighth argument claims that the evidence should be suppressed because he was
prejudiced by law enforcement's failure to file a return of the warrant within 14 days of the last data
acquisition as required by Magistrate Judge Eddy's order and Rule 41. (Docket No. 60, ¶ 10.a).
Defendant did not explain how he was prejudiced, simply stating that "prejudice . . . [was] evident
as the late return offends concepts of fundamental fairness and due process." (Docket No. 61 at 2).
Defendant's counsel subsequently claimed at the motion hearing that he was prejudiced because he
was unable to respond to a plea offer made to his prior counsel, as there was an outstanding
discovery request seeking the return. (Docket No. 66 at 43-44).

Agent Orlando testified at the hearing that the last acquisition of data from Defendant's
telephone occurred on March 2, 2015, but the return was not completed until November 1, 2016,

although his normal practice is to file a return for a "ping" warrant within 10 to 14 days following the last data acquisition. (Docket No. 66 at 53-54, 55). He then testified that the delay in filing the warrant return in this case was an unintentional oversight. (Id. at 55, 56). With this backdrop, counsel for the Government argued that the evidence should not be suppressed because the late return was not intentional and Defendant did not show how he purportedly was prejudiced by it during plea negotiations. (Id. at 44-46).

Rule 41 requires the officer who executes the warrant to promptly return it to the magistrate judge designated on the warrant. See Fed. R. Crim. P. 41(f)(1)(D). "The procedural requirements of Rule 41(d) are essentially ministerial in nature."[3] United States v. Hall, 505 F.2d 961, 963 (3d Cir. 1974) (citations omitted). In Hall, the Third Circuit explained that not every violation of the procedures in Rule 41 "however insignificant and however lacking in consequences, should give rise to the remedy of suppression." Id. at 964. Rather, a district court should grant a motion to suppress based on a Rule 41 violation only when the defendant demonstrates prejudice, "that is, prejudice in the sense that it offends concepts of fundamental fairness or due process." Id.

In this case, law enforcement's failure to strictly comply with Rule 41 and Magistrate Judge Eddy's order does not justify the remedy of suppression. Agent Orlando credibly testified that the warrant return was not timely filed due to an unintentional oversight; thus, there was no bad faith on the Government's part. Further, Defendant has made no showing of prejudice. Although Defendant's counsel claimed at the motion hearing that Defendant was prejudiced because he purportedly could not respond to a plea offer, he failed to explain why that was so. The only information required to be supplied on the warrant return was the following: (1) the date the warrant

---

3 When Hall was decided in 1974, Rule 41(d) addressed the requirement of promptly making a return of the search warrant. See Hall, 505 F.2d at 961 n.1. At present, that requirement is contained in Rule 41(f). See Fed. R. Crim. P. 41(f)(1)(D) (stating that "[t]he officer executing the warrant must promptly return it . . . to the magistrate judge designated on the warrant").

was issued; (2) the date and time that location data was first acquired pursuant to the warrant; (3) the date and time that location data was last acquired; and (4) the agent's name, signature and date. (See Docket No. 48-2). Defendant has not demonstrated how having this information would have enabled him to respond to a plea offer from the Government, nor has he otherwise shown the connection between the Rule 41 return and his plea negotiations. In the Court's view, the warrant return would have added nothing to Defendant's knowledge of the evidence against him, his ability to file pretrial motions or his decision to accept or reject a plea offer. In sum, suppression is not warranted based on law enforcement's ministerial violation of Rule 41(f).

### H.  The Vehicle Stop Was Supported by Reasonable Suspicion and the Subsequent Consent Search Was Lawful.

Defendant's ninth argument is that the evidence should be suppressed because the police searched the vehicle in which he was a passenger without probable cause to support a traffic stop or reasonable suspicion of criminal activity. (Docket No. 60, ¶ 10.b). The Government argues that Defendant's motion should be denied on this basis because the traffic stop was lawfully based on reasonable suspicion and the search of the vehicle was based on the driver's consent. (Docket No. 63 at 3-6). In addition, the Government asserts that Defendant has failed to raise a colorable claim that his constitutional rights were violated, thus no evidentiary hearing related to the traffic stop is required. (Docket Nos. 66 at 71-74; 100 at 33, ¶¶ I.11, I.12). The Court agrees that Defendant has not raised a colorable claim regarding this alleged Fourth Amendment violation, and no hearing is necessary to decide the issue.

### 1.  No Evidentiary Hearing Is Required on this Issue.

An evidentiary hearing on a motion to suppress is not held as a matter of course. See Fed. R. Crim. P. 12(c)(1) (providing that the court "may" schedule a motion hearing). The purpose of an evidentiary hearing on a suppression motion "is to assist the court in ruling upon a defendant's

specific allegations of unconstitutional conduct – its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010). Therefore, to require a hearing, "a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.' " Id. (quoting United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)). A hearing is required only if the suppression motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Id. (citing Voigt, 89 F.3d at 1067) (explaining that a claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct").

To summarize, the procedure for a defendant who seeks an evidentiary hearing on a motion to suppress is to "(1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the dispute." Hines, 628 F.3d at 108. Here, Defendant's Motion fails to state a colorable claim, raise a material fact or dispute the Government's version of events. Accordingly, an evidentiary hearing is not necessary.

First, Defendant's Motion does not properly raise a colorable legal claim. To raise a constitutional claim in a suppression motion, "a defendant must state that a violation occurred and allege facts that, if true, would support a finding that the evidence in question was obtained in violation of the defendant's constitutional rights." Hines, 628 F.3d at 105-106 (citing United States v. Brink, 39 F.3d 419, 424 (3d Cir. 1994)). To satisfy this requirement, the motion to suppress "must identify a constitutional violation at the outset and connect it to the evidence in question; bare assertions . . . without more, will not suffice." Hines, 628 F.3d at 106.

Defendant's Motion does not make the required showing. Defendant broadly alleges that the evidence should be suppressed ". . . because the police searched the vehicle without probable cause to support a traffic stop or reasonable suspicion of criminal activity." (Docket No. 60, ¶ 10.b.). Defendant does not allege any additional facts in his Supporting Brief that, if true, would support a finding that evidence was obtained in violation of his constitutional rights. (See Docket No. 61 at 2-3).

Next, Defendant has not raised a material fact. "In the context of a suppression motion, a defendant may raise an issue of material fact by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally." Hines, 628 F.3d at 106 (citing Voigt, 89 F.3d at 1067). Defendant has not submitted any evidence to substantiate his broad assertion that the police searched the vehicle without probable cause to support a traffic stop or reasonable suspicion of criminal activity; thus, he has failed to raise any issue of fact.

In addition, Defendant has not disputed the version of events set forth in Agent Orlando's affidavit in support of the criminal complaint or as otherwise submitted by the Government. Indeed, Defendant admits that on March 2, 2015, the police stopped a vehicle driven by Crystal Johnson in which he was a passenger. (See Docket No. 61 at 2). Defendant also concedes that Ms. Johnson consented to a search of the vehicle and a quantity of cocaine was recovered from the back passenger area. (Id.). These same facts are recounted in Agent Orlando's affidavit supporting the criminal complaint. (See Docket No. 1-1, ¶¶ 6-7). Other than claiming that the police did not lawfully stop the vehicle, defendant has not offered any version of events contrary to the version in Agent Orlando's affidavit. See United States v. Jackson, 363 F. App'x 208, 210 (3d Cir. 2010) (holding that there was no abuse of discretion in district court's decision to deny an evidentiary

hearing where the defendant did not offer any version of events contrary to the version contained in police reports attached to his motion).

For the foregoing reasons, Defendant's Motion fails to present a colorable constitutional claim, identify facts material to that claim, and show why the facts are disputed. Hence, an evidentiary hearing is not required on this issue; rather, it will be decided based upon the record that exists.

## 2. **The Stop of the Vehicle and the Consent Search were Lawful.**

Defendant argues that the police lacked reasonable suspicion of criminal activity or probable cause to believe that a motor vehicle violation occurred, thus the traffic stop of the vehicle in which he was travelling on March 2, 2015, was unlawful, and the evidence seized must be suppressed. (See Docket Nos. 60 at ¶ 10.b; 61 at 2). Defendant's position is legally and factually incorrect.

As an initial matter, there is no requirement that police must observe a motor vehicle violation prior to conducting a traffic stop. That is because "[t]he Fourth Amendment permits brief investigative stops - such as the traffic stop in this case - when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 134 S.Ct. 1683, 1687 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-418 (1981)); see also United States v. Cooper, 293 F. App'x 117, 119 (3d Cir. 2008) ("Under Pennsylvania law, police officers may perform an 'investigative detention' of a vehicle if they have reasonable suspicion to do so."). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' " Navarette, 134 S.Ct. at 1687 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). "The Supreme Court has not reduced 'reasonable suspicion' to a 'neat set of legal rules,' preferring instead a 'totality of the circumstances' approach focused on 'whether the detaining officer has a

particularized and objective basis for suspecting legal wrongdoing.' " <u>United States v. Stevenson</u>, 832 F.3d 412, 429 (3d Cir. 2016) (quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 273-74 (2002)). "Suspicion must be based on more than a 'mere hunch' to be reasonable, but 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.' " <u>Id.</u>

The record supports the conclusion that law enforcement had reasonable suspicion to stop the vehicle in which Defendant was a passenger. In August 2014, law enforcement identified Defendant after he was observed in a vehicle located in Farrell, Pennsylvania at the residence of a target of the investigation. (Aff. ¶ 19). In January 2015, a target was intercepted by law enforcement, began to cooperate and provided information about Defendant, who was his source of cocaine supply. (<u>Id.</u> ¶¶ 22, 23). The CI placed a consensually recorded call to Defendant during which they discussed the CI purchasing two kilograms of cocaine from Defendant. (<u>Id.</u> ¶ 25). Then, on January 31, 2015, law enforcement obtained a "ping" warrant to track the target telephone used by Defendant. (<u>See</u> Docket 48-2). Subsequently, in the days leading up to March 2, 2015, law enforcement utilized a CI to place consensually recorded calls to Defendant indicating that Defendant would be travelling from Akron, Ohio to Farrell to deliver 27 ounces of cocaine. (Aff. in Supp. of Crim. Compl. ¶ 5). On March 2, 2015, agents observed that the "ping" data related to the target telephone indicated Defendant was starting to head in the direction of Farrell. (Docket Nos. 48 at 5; 63 at 4). Law enforcement then used physical surveillance to identify the vehicle in which Defendant was travelling and continued to follow the vehicle until a traffic stop was conducted in Sharon, Pennsylvania. (<u>Id.</u>; Aff. in Supp. of Crim. Compl. ¶ 6). The foregoing information known to law enforcement prior to the traffic stop supports a reasonable, articulable suspicion that Defendant was engaged in drug trafficking, which justified the stop of the vehicle in which he was

travelling.

After the valid stop of the vehicle, Crystal Johnson, who was the driver (and registered owner), consented to a search, and the police located approximately 27 ounces of cocaine hidden behind a baby's car seat in the rear passenger area. (Aff. in Supp. of Crim. Compl. ¶¶ 6, 7).

The Fourth Amendment right to be free from unreasonable searches and seizures is a personal right and a defendant must establish standing in order to assert that right.[4] See United States v. Padilla, 508 U.S. 77, 81-82 (1993). A defendant bears the burden to establish standing to raise a Fourth Amendment challenge. See Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). In order to establish standing, an individual claiming Fourth Amendment protection must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998).

Defendant has not met that burden here. As a passenger in the vehicle, Defendant had no reasonable expectation of privacy in the vehicle and thus lacks standing to object to evidence discovered in a search of it. See Mosley, 454 F.3d at 252-53 ("Passengers in cars, unlike owners or licensees, have no reasonable expectation of privacy in the interior of the vehicle in which they are riding."); see also United States v. Seigler, 484 F. App'x 650, 654 (3d Cir. 2012) (holding that a defendant who was not the owner of the vehicle that was searched had no reasonable expectation of privacy in it and lacked standing to challenge the search). Moreover, Ms. Johnson consented to the search of the vehicle which resulted in discovery of the cocaine, and Defendant has not contested Ms. Johnson's authority to consent. For these reasons, the vehicle search was lawful and suppression of the cocaine is not warranted.

---

4 "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." United States v. Mosley, 454 F.3d 249, 253 n.5 (3d Cir. 2006) (citations omitted).

**I.    Law Enforcement Was Not Required to Show that the Information Sought by the Warrant Was Relevant and Material to the Investigation.**

Defendant's final argument is that the evidence should be suppressed because no showing was made that the data obtained pursuant to the warrant was relevant and material to achieve the goals of the investigation, contrary to the requirement of 18 U.S.C. § 2703(d).  (Docket Nos. 60, ¶ 10.d; 61 at 4).  This argument is without merit because § 2703(d) is inapplicable here.

Section 2703(d) sets forth the requirements for obtaining a court order for information subject to disclosure under the Stored Communications Act.  Such a court order "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe" that the records "are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  The Third Circuit has observed that the "reasonable grounds" requirement is a lesser burden than the requirement of probable cause under the Fourth Amendment.  See United States v. Stimler, ___ F.3d ___, 2017 WL 3080866, at *3 (3d Cir. July 7, 2017) (citing In re Applic. of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't, 620 F.3d 304, 315 (3d Cir. 2010) ("[T]he standard [of reasonable grounds] is an intermediate one that is less stringent than probable cause.").

 Here, the "reasonable grounds" requirement of § 2703(d) is inapplicable because the "ping" warrant in this case was issued pursuant to 18 U.S.C. § 2703(c)(1)(A) and Fed. R. Crim. P. 41 based on Magistrate Judge Eddy's finding of probable cause.  Accordingly, there is no Fourth Amendment violation because the Affidavit in support of the warrant was properly evaluated under the more

exacting probable cause standard,[5] as opposed to the lower standard contained in § 2703(d) that Defendant incorrectly claims to apply.

**IV.**     <u>**Conclusion**</u>

Based on the foregoing, Defendant's Motion to Suppress and Amendment thereto (Docket Nos. 45 and 60) are DENIED.  An appropriate Order follows.


<u>s/Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge


Date:   <u>August 21, 2017</u>



cc/ecf:  Stephen Gilson, Assistant U.S. Attorney

Stephen H. Begler, Esq.

---

5 <u>See</u> discussion <u>supra</u> at 6-10.